IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DW VOLBLEU, LLC, and SILVERLEAF V, LLC, on behalf of themselves and all other similarly situated persons, | § § § § | |
| Plaintiffs, | § § § | |
| vs. | § § | Civil Action No. 4:21-cv-00637-SDJ |
| HONDA AIRCRAFT COMPANY, INC.; and HONDA AIRCRAFT COMPANY, LLC, | § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR CLASS RELIEF**

In accordance with the Court's Order dated September 22, 2021 [Doc. 11] Plaintiffs DW Volbleu, LLC and Silverleaf V, LLC on behalf of themselves and on behalf of all others similarly situated, file this First Amended Complaint complaining of Honda Aircraft Company, Inc., and Honda Aircraft Company, LLC (collectively "Defendants") further pleading requisite jurisdictional allegations, and respectfully show as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest; and minimal diversity exists. The Court also has supplemental jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. §1367.

2. Venue is proper in this District and Division, under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of Plaintiffs and the Class members occurred in this District and Division.

## PARTIES

3. Plaintiff DW Volbleu, LLC is a Texas limited liability company with its principal place of business in Denton County, Texas. Waldemar Maya, and individual, is one of its members and he resides in and is a citizen of the State of Texas. The other member of DW Volbleu, LLC is a family limited partnership called the CKH Family Limited Partnership.[1] Its general partner is CKH GP, LLC, whose manager is Marquis UG Venture, Inc. CKH Family Limited Partnership, CKH GP, LLC and Marquis UG Venture, Inc. are all entities formed in Texas pursuant to Texas law, and each maintains its principal place of business in Texas.

4. Plaintiff Silverleaf V, LLC is a Montana limited liability company with its principal place of business in Maricopa County, Arizona. Its sole member is Jerry Buesing who is an individual, resident and citizen of the State of Arizona.

5. Defendant Honda Aircraft Company, Inc. is a duly existing corporation organized under the laws of the State of Delaware with its principal place of business in the State of North Carolina. Honda Aircraft Company, Inc. is headquartered in North Carolina, and is a company that designs, manufactures, markets, sells and services HondaJet airplanes throughout the United

---

[1] Due to its purpose and nature, the identities of the limited of CKH Family Limited Partnership are maintained as confidential-- beyond the individual who created the same – Douglas Hickok-- for the benefit of his family and family members, which include his spouse and five (5) trusts established for several other family members. Mr. Hickok and his spouse are individuals who both reside in and are citizens of Dallas County, Texas. Each of the five (5) trusts, trust offices are located and operated in Dallas County, Texas. All of the trustees for the five (5) trusts are individuals who reside in and are citizens of Dallas County, Texas. Four of the trust beneficiaries are individuals who reside in and are citizens of Dallas County, Texas, and one is an individual who resides in and is a citizen of Travis County, Texas. Should the Court require more information on the identities of these limited partners, Plaintiffs respectfully request leave to provide the same *in camera* or under seal.

States, including the State of Texas, and globally. This Defendant has and continues to systematically transact business in the State of Texas such that exercise of personal jurisdiction is appropriate in a court located in Texas. Moreover, the Defendant has committed the torts and unlawful actions described herein in the State of Texas. Thus, general and specific jurisdiction is conferred on this Court. This Defendant has been served and made an appearance herein through its attorneys of record, including William S. Helfand, Lewis Brisbois Bisgaard & Smith, LLP, 24 Greenway Plaza, Suite 1400, Houston, Texas 77046.

6. Defendant Honda Aircraft Company, LLC is a duly existing limited liability company organized under the laws of the State of Delaware with its principal place of business in North Carolina. On information and belief, the sole member of Honda Aircraft Company, LLC is American Honda Motor Co. Inc., a corporation incorporated in California with its principal place of business in the State of California. Honda Aircraft Company, LLC is a company that designs, manufactures, markets, sells and services HondaJet airplanes throughout the United States, including the State of Texas, and globally. This Defendant has and continues to systematically transact business in the State of Texas such that exercise of personal jurisdiction is appropriate in a court located in Texas. Moreover, the Defendant has committed the torts and unlawful actions described herein in the State of Texas. This Defendant has been served and made an appearance herein through its attorneys of record, including William S. Helfand, Lewis Brisbois Bisgaard & Smith, LLP, 24 Greenway Plaza, Suite 1400, Houston, Texas 77046.

## FACTUAL BACKGROUND

7. Plaintiffs and the proposed Class are purchasers, owners or operators of HondaJets. HondaJets are manufactured by the Defendants and sold and serviced by the Defendants themselves, and through a network of regional dealers located throughout the United States.

8. According to Defendants, in December 2015, the HondaJet received FAA type certification, signifying that it had met the FAA's strict criteria for safety, reliability and technology. As part of the type certification process, "Honda Aircraft" conducted over 3000 hours of flight testing and submitted more than two million pages of documentation.

9. According to Defendants, in 2021 the HondaJet became the most delivered aircraft in its class for the fourth consecutive year, after first achieving most-delivered status in 2017. "Honda Aircraft Company's" sales and service footprint spans North America, Europe, Latin America, Southeast Asia, China, the Middle East, India, Japan, and Russia while the global HondaJet fleet grows to more than 170 aircraft.

10. On information and belief, approximately 207 HondaJets have been manufactured and sold as of the filing of this lawsuit.

11. All purchasers of HondaJets purchased their respective aircrafts pursuant to written contracts that either contained or required the delivery by Defendants to all purchasers and operators, of the specifications, capabilities and the operational, service and maintenance requirements of the HondaJet and its components. A combination of written contracts, sales and marketing literature, and owner/user warranty materials, coupled with owners' and operators' manuals and training materials, define the usage airworthiness of each aircraft, and prescribed the maintenance and service required both to maintain contractual warranty coverage, and to keep each aircraft airworthy and fully operational, on an ongoing basis after the sale. This literature has been supplemented from time to time, with various notices, service notices, bulletins, or other communications, when there is a need for maintenance, repairs, service, or other action not previously discussed or addressed in prior disseminated operational literature, notices, or communications.

12. Plaintiffs and other purchasers rely upon Defendants' marketing and advertisements in deciding to purchase, own and operate HondaJets, on a longtime basis. In fact, the HondaJet engines were touted by Defendants as having a 5,000-hour TBO (time before overhaul), which was one of the biggest selling points of the airplane that was used extensively in the marketing of HondaJets for sale and use by owner/operators, including those who were new to the jet ownership business. In an ongoing relationship after the sale of an aircraft, delivery and initial training, Plaintiffs and the Class further rely upon Defendants to properly notify Plaintiffs and the Class of material changes in safety-related or other material, maintenance, repair, or operational recommendations when Defendants know of the same, or reasonably should know of the same.

13. Defendants have continuously advertised the following about the HondaJets and the ownership experiences they sell:

> HondaJet enhances your mobility to meet your business or personal needs. On occasion you may need service or support away from your home location or HondaJet dealer facility. Honda Aircraft Company and the HondaJet dealer network will be there to support you. Should the need arise, mobile repair teams can be dispatched from any HondaJet dealer or from Honda Aircraft Company in Greensboro, NC. As part of our commitment to an exceptional customer ownership experience, Honda field service representatives are available to provide on-site support. They serve as technical support liaisons to both customers and dealers and will actively participate in customer visits, warranty support, reliability reporting, resolution of issues and overall care of our customers.

14. Defendants also have continuously advertised the following about the HondaJets and the ownership experiences they sell:

> Around the Clock, Around the World
>
> Our technical support center operates 24/7, with specialists trained to help you with anything from immediate AOG ownership and general troubleshooting, to data and fault analysis. Technicians interface with service engineering, conducting aircraft repairs, service bulletin development, reliability and corrective action systems and

> maintenance program analysis.  For 24/7 AOG Support call: 888.453.2501 or 336.217.4702

15. All owner operators of HondaJets (or third-party owner-designated operators or pilots) are offered and receive extensive flight and maintenance training from Defendants and various of their partners, to enhance their ownership and operational experiences. Some elect to rely upon the Defendants' agent who are identified by Defendants as certified service centers, to ensure that all maintenance requirements are known and adhered to.  During flight and maintenance training, Defendants teach owners and operators about the general maintenance requirements that must be adhered to so as to maximize the useful life of the aircraft and its engines.  Various service and maintenance plans are available for purchase as well, with service and maintenance to be provided by Defendants' agent network of certified facilities.

16. On information and belief, beginning around March of 2020 Defendants came to realize that owners and operators of HondaJets might not be flying their aircrafts with the same regularity as they were being flown prior to the onset of the COVID-19 worldwide pandemic. Owners who may have been using their aircrafts less regularly were still maintaining and servicing their aircraft in compliance with all known and disclosed maintenance and service and operational requirements, even if they were not flying their aircraft, or flying their aircraft with regularity.

17. In around June of 2021, Plaintiffs discovered from sources other than Defendants that in April of 2020, Defendants purportedly had given notice to owners and operators of HondaJets about a requirement to fire up and run the engines of each HondaJet aircraft for 15 minutes, every 90-days, if the aircraft was not being flown during such a 90-day period.  Defendants apparently called this a requirement of storage of the HondaJet, although most owners and operators were not storing their aircraft, even if utilization had declined during the pandemic.

18.    In or around June of 2021, Plaintiffs likewise discovered that Defendants were requiring or warning all owners and operators who had ever failed to run the engines on their aircrafts for 15 minutes every 90-days, or longer, to submit their engines to a tedious and expensive inspection and overhaul and repair process depending on the duration of consecutive days when the engines were not run in such a manner. More specifically, Defendants informed Plaintiffs that all implicated engines, being those that had not been run pursuant to this purported recommendation, had to be removed from the aircrafts, and disassembled to look for any corrosion which may or may not have taken place, at a substantial cost estimated to be $700,000 per engine pair, in many instances, if not discounted by Defendants for some reason.

19.    And each removed engine requiring such a disassembly, inspection and repair had to be sent to Defendants' approved overhaul facility rather than to one of Defendants' regional certified service centers, in lieu of Defendants dispatching certified overhaul technicians to the location of aircrafts that were effectively grounded by this disassembly, service and repair requirement, notwithstanding the fact that Defendants advertise that they will do so on a 24-hour, 7-day a week basis when such service is required.

20.    There is no mention of this purportedly recent recommendation to run the engines or the consequences of not doing so, on Defendants' website, in communications among owners and operators in an owners' and operators' forum, or in any communication from the dealers who sold the HondaJets to Plaintiffs and the Class. There is no such recommendation in any sales or training literature disseminated to Plaintiffs and the Class at the time of their purchase, or after. In fact, from April of 2020 until Plaintiffs happened to discover the recommendation and consequences of failing to run the engines as recommended, even dealers or approved contractors who maintained and operated HondaJets for their owners (including Plaintiff Silverleaf V, LLC)

seemingly had no idea of the Defendants' run-the-engines recommendation, or the need for the recommended inspection and repair overhaul process if the engines were not run as putatively recommended.

21. "Service Letters" are used to provide general information related to product improvement, economics, maintenance and/or operational practices. They do not communicate emergency and safety operational maintenance and repair recommendations. Plaintiffs are unaware of how many Class members have yet to discover that flying their aircraft -- if the engines were not run for at least 15 minutes during a 90-day period -- requires a substantial and costly inspection and repair process that requires a grounding of the aircraft until the same is complete, to ensure its safety and usage airworthiness. Any notices putatively provided by Defendants most certainly do not highlight or emphasize the engine use recommendation, nor do they highlight or emphasize the consequences of failing to adhere to the engine use recommendation so that reasonably diligent owners and operators would become aware of the recommendation and consequences of not following the same.

22. Plaintiffs have located an April, 2020 service letter, and deep into the letter under a section entitled "Planning: Honda Aircraft Company recommends," readers are directed to search elsewhere for what is "recommended" in a manner that conceals, rather than makes apparent, what is recommended with regard to the running the engines for 15 minutes every 90-days. But more importantly, nowhere in the letter or elsewhere that Plaintiffs can identify, did Defendants communicate that a failure of this previously unidentified recommendation to be followed would impair the safety and usage airworthiness of the aircraft and its engines such that the engines would have to be removed and disassembled, inspected, and repaired, at substantial time and money cost to the aircraft owner, as a condition to safely operate the aircraft in the air.

23. When Plaintiffs discovered the problem from sources other than Defendants, they already had allowed their aircrafts to sit for more than 90-days without running the engines for a 15-minute period. Accordingly, Plaintiffs were immediately subject to the removal, disassembly, inspection, and repair process Defendants insisted was a requirement of ensuring the airworthiness and safety of the aircraft, going forward, if the engines had sat idle for such a 90-day period of time. Other Class members are similarly situated.

24. At the time of purchase and throughout the history of the manufacture and delivery of each HondaJet aircraft, and the history of extensive training provided to owners and pilots, there was never any warning, advisory, notice or even a recommendation by Defendants that the engines needed to be operated for some particular period of time or in some manner such described as above, in order to avoid a major engine overhaul and the extensive cost of the same. As noted above, Defendants marketed and advertised their engines as having a 5,000-hour time before overhaul rating.

25. Defendants' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, and selling aircrafts with engines that required a certain usage requirement without any warning or notice or disclosure of this requirement and Defendants' concealment of the same has caused Plaintiffs and all Class members substantial out-of-pocket losses, loss of warranty exposure, and diminished value of their aircraft.[2]

26. Defendants knew about, manipulated, or recklessly disregarded the fact that the engines powering all of its aircrafts would require a certain amount of usage or that the engines could be subject to a failure or non-certification, but they failed to timely and properly disclose

---

[2] Plaintiff Silverleaf V, LLC has attempted to mitigate its losses and damages by removing the engines from its HondaJet, and delivering the same to Defendants; however, Plaintiff was charged over $350,000.00 for the overhaul work that was putatively performed. Both Plaintiffs have lost potential opportunities to sell their aircrafts, due to their disclosure obligations of this defect in the HondaJet and/or its component engines.

this defect and the need to modify operations of the engines to avoid it, to Plaintiffs and the Class. In fact, Defendants actually concealed the defect and manner in which it can be avoided, from Plaintiffs and the Class and now seek to profit from that concealment by charging Plaintiffs and the Class hundreds of thousands of dollars for the overhaul repair process Defendants claim is an absolute necessity for safe operations of HondaJets whose engines were not run for at least 15 minutes during any 90-day stretch of time.

27.     Accordingly, Plaintiffs bring this lawsuit to recover for Defendants' defective and deficient design of the HondaJets inasmuch as apparently, in order to be safely operated, the aircraft engines must be operated for a specific period of time and in a certain manner whether flown or on the ground.  Plaintiff further brings this action to recover for the failure of Defendants to advise and/or warn, or to adequately advise and warn of the need to use the engines in a certain manner and the failure of Defendants to advise and/or warn, or to adequately advise and warn, of the costly consequences of failing to use the engines in such a manner.

## CLASS ALLEGATIONS

28.     Defendants are residents of North Carolina who market, advertise, sell, service and provide training to potential and actual purchasers of HondaJets located all over the world. Plaintiffs bring this action on behalf of themselves and as a class action under the laws of the State of North Carolina, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class: All persons or entities who purchased and own a HondaJet.

29.     Excluded from the Class are Defendant and its parents, subsidiaries, and affiliates; all persons who properly elect to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

30.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs and Class members can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

31.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

32.     Numerosity, Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are at least hundreds of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

33.     Commonality and Predominance, Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation: i. Whether Defendants engaged in the conduct alleged herein; ii. Whether Defendants aircraft have the defects alleged herein; iii. Whether Defendants had a duty to disclose the existence of the defect alleged herein; iv. Whether Defendants' conduct violates applicable consumer protection statutes and other laws as asserted herein; v. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and vi. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

34. Typicality, Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

35. Adequacy, Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

36. Superiority, Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. One single action creates less burden on the court system in general and avoids potential for inconsistent or contradictory judgments and limits the chance for delay and expense to all parties and the court system.

## CAUSES OF ACTION

### Count 1: Fraudulent Concealment

37. Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

38. Defendants have known or should have known from their extensive testing and monitoring of the HondaJet that the design and manufacture of the same or its component engines was such that the engines would have to be run for at least 15 minutes, every 90-days, in order to remain fully operational, safe, and airworthy, even if the aircraft was not flown during such a 90-day period.  Similarly, Defendants have known or should have known that a failure to run the

engines on its HondaJets for at least 15 minutes, every 90 days, would require a costly and inconvenient total engine breakdown, inspection, overhaul, and repair.

39. Defendants intentionally concealed this information or acted with reckless disregard for the truth and denied the consuming public information that is highly relevant to their purchasing decision, and the manner in which they would own and operate HondaJets they already own following their purchase.

40. Plaintiffs and the Class are entitled to damages, including increased maintenance and repair costs, the diminished value of their aircrafts and the costs to reasonably break down their engines for inspection and repair, in addition to incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

**North Carolina Consumer Protection Act;**
**N.C. Gen, Stat. §§ 75-1,1 through 75-35**

41. Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

42. N.C. Gen. Stat. Ann. § 75-1.1 makes unfair or deceptive acts or practices in or affecting commerce unlawful.

43. In the course of Defendants' business, they have knowingly failed to disclose and actively concealed the dangerous risks and expensive costs and consequences of not running the engines on HondaJets for at least 15 minutes during every 90-day period of time. These were unlawful practices in that Defendants represented that HondaJets and their component engines have characteristics, uses, benefits, and qualities which they do not have; represented that HondaJets and their component engines are of a particular standard and quality when they are not;

and advertised HondaJets and their component engines with the intent not to sell them as advertised.

44. As North Carolina residents involved in the marketing, advertising, sale, and servicing of a complex consumer product to consumers who relied upon Defendants after a sale, Defendants knew or should have known that their conduct violated North Carolina's consumer protection statutes.

45. Defendants engaged in an unlawful practice when they failed to disclose material information concerning the HondaJets and their component engines that they knew at the time of the sale or after, and Defendants deliberately withheld or concealed the information that the engines on HondaJets could become severely damaged and unsafe for their intended purposes, if the engines were not run for at least 15 minutes every ninety days, or broken down, disassembled, inspected and repaired, before use of the engines and the aircraft they power, in flight.

46. Defendants' unlawful practices caused substantial injury to consumers. Defendants are liable for the same unlawful practices that were caused by their agent dealers.

47. The defective engine manufacture, and the resultant propensity unsafe operations of the HondaJet, unless costly repairs were performed long before a total overhaul was required, was material to Plaintiffs and the Class.

48. Defendants' conduct as described above has caused Plaintiffs and the Class injuries in violation of N.C.G.S. § 75-1 6. Plaintiffs and Class Members overpaid for their HondaJets and did not receive the benefit of their bargain, and their aircrafts have suffered a diminution in value. Plaintiffs and the Class are accordingly entitled to treble damages.

49. Defendants have willfully engaged in the acts and practices described above, and they have made unwarranted refusal to fully resolve the matter which constitutes the basis of this suit, entitling Plaintiffs and the Class to an award of attorney's fees under N.C.G.S. § 75-16.1.

### Breach of Express Warranty

50. Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

51. Defendants are and were at all relevant times merchants as defined by the Uniform Commercial Code ("UCC"), N.C. Gen. Stat. §25-2-104. Defendants expressly warranted that the HondaJets and their component engines, which are merchandise, were safe. These warranties became part of the basis of the bargain.

52. Defendants expressly warranted that HondaJets and their component engines, which are merchandise, were merchantable and fit for use for particular purposes at the time of the purchase and sale. These warranties became part of the basis of the bargain.

53. Defendants' HondaJets and their component engines were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of purchase and sale. As a direct and proximate result of Defendants' breach of the express warranty, Plaintiffs and the Class have been damaged as a result of the diminished value of their aircrafts.

54. Plaintiffs and the Class are entitled to damages, including the diminished value of their aircrafts as a result of the defects complained of, in addition to any costs of remediation, loss of profits, incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

## Breach of Implied Warranty

55. Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

56. Defendants are and were, at all relevant times, merchants as defined by the Uniform Commercial Code ("UCC"), N.C. Gen. Stat. § 25-2-1 04. Defendants and their agents impliedly warranted that HondaJets and their component engines were merchandise which was merchantable and fit for use for particular purposes at the time of the purchase and sale.

57. HondaJets and their component engines were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of the purchase and sale.

58. As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs and the Class have been damaged by the diminished value of their aircrafts, loss of profit, and other incidental and consequential damages, including such further relief as the Court deems just and proper.

## Punitive Damages and Attorneys' Fees

59. Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

60. Defendants' conduct described herein was willful, wanton, and malicious. Upon information and belief, the conduct was so widespread throughout each of Defendants' corporations such that the officers, directors, and/or managers of each corporation knew or should have known of the HondaJets and component engine defects complained of, and through their failure to take corrective action, they condoned the willful, wanton, and malicious conduct.

61. Accordingly, Plaintiffs and the Class are entitled to an award of punitive damages in an amount to be determined by a jury.

62. Plaintiffs and the Class also seek an award and recovery of reasonable and necessary attorney's fees as authorized by applicable law.

## JURY DEMAND

63. Plaintiffs hereby demand a trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be summoned to appear and answer, that class certification occur promptly as provided by law and that upon final trial of this matter Plaintiffs and the Class recover a judgment against the Defendants that includes:

(a) a sum of damages within the minimum jurisdictional limits of this Court;

(b) exemplary damages;

(c) pre-judgment interest as provided by law;

(d) post-judgment interest at the highest rate allowed by law; and

(e) attorney's fees and cost of suit.

Respectfully submitted,

*/s/ Kenneth B. Chaiken*
Kenneth B. Chaiken
State Bar No. 04057800
kchaiken@chaikenlaw.com
Robert L. Chaiken
State Bar No. 04057830
rchaiken@chaikenlaw.com

**CHAIKEN & CHAIKEN, P.C.**
5717 Legacy Dr., Suite 250
Plano, Texas 75024
(214) 265-0250 telephone
(214) 265-1537 facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's ECF system on this 29th day of September, 2021.

                                                    */s/ Kenneth B. Chaiken*
                                                    Kenneth B. Chaiken