**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **DW VOLBLEU, LLC, and SILVERLEAF** | § | |
| **V, LLC, on behalf of themselves and** | § | |
| **all other similarly situated persons,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Action No. 4:21-cv-00637-SDJ** |
| **HONDA AIRCRAFT COMPANY, LLC;** | § | |
| **CUTTER AVIATION DALLAS, INC.;** | § | |
| **CUTTER AVIATION PHOENIX, INC.;** | § | |
| **TOWER INDUSTRIES, LLC d/b/a** | § | |
| **HONDAJET SOUTHWEST; and GE** | § | |
| **HONDA AERO ENGINES, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' THIRD AMENDED COMPLAINT FOR CLASS RELIEF**

Plaintiffs DW Volbleu, LLC and Silverleaf V, LLC on behalf of themselves and on behalf of all others similarly situated, file this Third Amended Complaint complaining of Honda Aircraft Company, LLC ("Honda"), Cutter Aviation Dallas, Inc., Cutter Aviation Phoenix, Inc. (collectively "Cutter Defendants"),  Tower Industries, LLC d/b/a HondaJet Southwest ("Tower") and GE Honda Aero Engines, LLC ("GHAE")  (all collectively "Defendants"), and respectfully show as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest; and minimal diversity exists.

The Court also has supplemental jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. §1367.

2.      Venue is proper in this District and Division, under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of Plaintiffs and the Class members occurred in this District and Division.

## PARTIES

3.      Plaintiff DW Volbleu, LLC is a Texas limited liability company with its principal place of business in Denton County, Texas.  Waldemar Maya, an individual, is one of its members and he resides in, and is a citizen and domiciliary of the State of Texas, which is where Mr. Maya has his true, fixed and permanent home. The other member of DW Volbleu, LLC is a family limited partnership called CKH Family Limited Partnership, LP.  Its general partner is CKH GP, LLC, whose non-member manager is Marquis UG Venture, Inc. The sole member of CKH GP, LLC is Douglas Hickok.  Douglas Hickok is an individual, citizen and domiciliary of the State of Texas, which is the State in which Mr. Hickok has his true, fixed, and permanent home.

4.      The identities of the remaining limited partners of CKH Family Limited Partnership and the requisite pleading information establishing that CKH Family Limited Partnership, LP is a Texas citizen, as required by applicable authorities, have previously been filed and accepted by the Court.

5.      CKH Family Limited Partnership, LP, CKH GP, LLC and Marquis UG Venture, Inc. are all entities formed in Texas pursuant to Texas law, and each maintains its principal place of business and office in Texas.

6.      Plaintiff Silverleaf V, LLC is a Montana limited liability company with its principal place of business in Maricopa County, Arizona.  Its sole member is Jerry Buesing who is an

individual, resident and citizen of the State of Arizona, where Mr. Buesing is domiciled and has his true, fixed and permanent home.

7.      Defendant Honda Aircraft Company, LLC is a duly existing limited liability company organized under the laws of the State of Delaware with its principal place of business in North Carolina.  On information and belief, the sole member of Honda Aircraft Company, LLC is American Honda Motor Co. Inc., a corporation incorporated in California with its principal place of business in the State of California.  Honda Aircraft Company, LLC is a company that designs, manufactures, markets, sells and services HondaJet airplanes throughout the United States, including the State of Texas, and globally. This Defendant has and continues to systematically transact business in the State of Texas such that exercise of personal jurisdiction is appropriate in a court located in Texas. Moreover, the Defendant has committed the torts and unlawful actions described herein in the State of Texas.  This Defendant has been served and made an appearance herein through its attorneys of record, including William S. Helfand, Lewis Brisbois Bisgaard & Smith, LLP, 24 Greenway Plaza, Suite 1400, Houston, Texas 77046.

8.      Defendant Cutter Aviation Dallas, Inc. is a duly existing corporation organized under the laws of the State of Arizona with its principal place of business in the State of Arizona. Cutter Aviation Dallas, Inc. is a company that provides aircraft maintenance and services in the State of Texas. This Defendant has and continues to systematically transact business in the State of Texas such that exercise of personal jurisdiction over this non-citizen Defendant is appropriate in a court located in Texas. Moreover, the Defendant has committed the torts and unlawful actions described herein in the State of Texas.  Thus, general and specific jurisdiction is conferred on this Court.  This Defendant may be served with process by serving its registered agent:  CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

9.    Defendant Cutter Aviation Phoenix, Inc. is a duly existing corporation organized under the laws of the State of Arizona with its principal place of business in the State of Arizona. Cutter Aviation Phoenix, Inc. is a company that provides aircraft maintenance and services in the State of Arizona. On information and belief, this Defendant transacts business in Texas and with Texans so as to purposefully avail itself to jurisdiction and is otherwise subject to jurisdiction by virtue of minimal contacts with the State of Texas.  This Defendant may be served with process by serving its registered agent:  Gary A. Drummond, Esq., 4747 N. 7th Street, Suite 402, Phoenix, Arizona 85014.

10.    Defendant Tower Industries, LLC d/b/a HondaJet Southwest is a duly existing limited liability corporation organized under the laws of the State of Arizona with its principal place of business in the State of Arizona.  Tower Industries, LLC d/b/a HondaJet Southwest is an aircraft dealer that provides services in the State of Texas and in the State of Arizona. This Defendant has and continues to systematically transact business in the State of Texas such that exercise of personal jurisdiction is appropriate in a court located in Texas. Moreover, the Defendant has committed the torts and unlawful actions described herein in the State of Texas. Thus, general and specific jurisdiction is conferred on this Court.  This Defendant may be served with process by serving its registered agent:  Gary A. Drummond, Esq., 4747 N. 7th Street, Suite 402, Phoenix, Arizona 85014.

11.    Defendant GE Honda Aero Engines, LLC ("GHAE") is a duly existing limited liability company organized under the laws of the State of Delaware with its principal place of business in North Carolina.  On information and belief, GHAE is a 50/50 joint company owned by General Electric Company and Honda Aero, Inc.  General Electric Company is a corporation incorporated in New York with its principal place of business in the State of Massachusetts.  Honda

Aero, Inc. is a corporation incorporated in Delaware with its principal place of business in the State of North Carolina.  Upon information and belief, GHAE's members are citizens of the State of Ohio.[1]  GHAE is a company that designs, manufactures, markets, sells and services HondaJet engines throughout the United States, including the State of Texas, and globally. This Defendant has and continues to systematically transact business in the State of Texas such that exercise of personal jurisdiction is appropriate in a court located in Texas. Moreover, the Defendant has committed the torts and unlawful actions described herein in the State of Texas.  This Defendant may be served with process by serving its registered agent:  The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

## FACTUAL BACKGROUND

A.      **History and Background of the HondaJet.**

12.      Plaintiffs and the proposed Class are purchasers, owners or operators of HondaJets. HondaJets are manufactured by Defendant Honda.

13.      The HondaJet engines are separately manufactured by GE Honda Aero Engines, LLC ("GHAE"), a 50/50 joint company owned by The General Electric Company and Honda Aero, Inc.

14.      According to Defendant Honda, in December 2015, the HondaJet received FAA type certification, signifying that it had met the FAA's strict criteria for safety, reliability and technology. As part of the type certification process, "Honda Aircraft" conducted over 3000 hours of flight testing and submitted more than two million pages of documentation.

15.      According to Defendant Honda, in 2021 the HondaJet became the most delivered aircraft in its class for the fourth consecutive year, after first achieving most-delivered status in

---

[1] *See*, Case No. 1:21-cv-00051-DRC styled *The Skyway Group, Inc. v. GE Honda Aero Engines, LLC*, Doc No. 1 at ¶ 3 and Doc. No. 6 at ¶ 3.

2017.  "Honda Aircraft Company's" sales and service footprint spans North America, Europe, Latin America, Southeast Asia, China, the Middle East, India, Japan, and Russia while the global HondaJet fleet grows to more than 170 aircraft.

16.     On information and belief, approximately 207 HondaJets have been manufactured and sold as of the filing of this original lawsuit.

**B.    The Maintenance Manuals.**

17.     All purchasers of HondaJets purchased their respective aircrafts pursuant to written contracts that either contained or required the delivery by Defendant Honda to all purchasers and operators, of the specifications, capabilities and the operational, service and maintenance requirements of the HondaJet and its components.  A combination of written contracts, sales and marketing literature, and owner/user warranty materials, coupled with owners' and operators' manuals and training materials, define the usage airworthiness of each aircraft, and some prescribed maintenance and service required both to maintain contractual warranty coverage, and to keep each aircraft airworthy and fully operational, on an ongoing basis after the sale. This literature has been supplemented from time to time, with various notices, service notices, bulletins, or other communications, when there is a need for maintenance, repairs, service, or other action not previously discussed or addressed in prior disseminated operational literature, notices, or communications.  According to Defendant Honda Aircraft Company, a "Line Maintenance Manual" and/or an "Aircraft Maintenance Manual" provide adequate notice to aircraft owners, of the operational and maintenance, or service requirements that are the subject of this lawsuit.

18.     The operational manuals for the HondaJets are furnished in physical format to the owners of the planes, for example, the Airplane Flight Manual ("AFM"). However, the aforementioned maintenance manuals for the plane are not provided in a physical format. The

pertinent manuals for the purposes of the claims herein are the Aircraft Maintenance Manual ("AMM") and Line Maintenance Manual ("LMM"), neither of which are provided in a printed format to the owners and operators, but instead are only available in a digital format online.  They are used and relied upon by service and maintenance providers in the performance of maintenance and service requirements.

19.    More specifically, the AMM is a manual published by Defendant Honda and provides instructions for maintenance personnel to do servicing, maintenance tasks and tests on the HondaJet.  The AMM requires that "[t]echnicians and maintenance personnel that do maintenance in accordance with this manual must have experience in aviation and have attended the necessary training." In order to access the AMM, the HondaJet owner must set up an online account and connection through a HondaJet Owner Portal Access known as "HondaJet Connect". Through this portal, after clicking on various tabs and icons, the HondaJet owner can find and access the AMM.

20.    Access to the AMM, as well as Service Bulletins and Service Letters, is provided free for the first year of ownership of the HondaJet.  If a HondaJet owner wants to have continued access to the AMM, or the Service Bulletins and Service Letters, they must pay an electronic access subscription fee (again, the only way to access the AMM is electronically) at a cost of a minimum of $2,400 for the AMM and an additional $1,000 for each of the Service Bulletins and Service Letters.

21.    The LMM is a manual published and maintained by GHAE and provides instructions for the servicing of the engines for the HondaJet.  HondaJet owners and operators are only able to access the LMM if they have purchased the Engine Maintenance Care ("EMC") package available through GHAE.  The EMC provides additional coverage for the engines on the

HondaJet, that includes access to GHAE's network of authorized service providers ("ASP") who are required to have available GHAE Line Maintenance trained ASP technicians at the ASP locations. The owner will then be able to establish a separate online account and connection with GHAE through the my.gehonda.com portal ("GHAE Portal").  Again, the LMM is not provide in physical format to aircraft owners by either Honda or GHAE and can only be accessed online.

**C.    Cutter Defendants and Tower Defendants relationship with Honda.**

22.    Defendant Tower is a HondaJet Dealer, pursuant to a Dealer Agreement between it and Defendant Honda, which sells and provides maintenance services on HondaJets.  Defendant Tower was the original purchaser of the HondaJet that was eventually sold to Plaintiff Silverleaf V, LLC.  Plaintiff Silverleaf V, LLC entered into a leaseback agreement with Defendant Tower which provided that the HondaJet would remain at Defendant Cutter Aviation Phoenix and Defendant Tower would maintain and keep the HondaJet in good order and repair.  Some, or all, of Defendant Tower officers are also officers of the Cutter Defendants. Defendant Tower set up a HondaJet connect account on behalf of Plaintiff Silverleaf and on in formation and belief also had access to the GHAE portal.

23.    The Cutter Defendants are ASPs for Defendant Honda and GHAE and were the service providers for Plaintiffs.  Plaintiffs relied upon the Cutter Defendants to properly maintain and service their HondaJets as well to be aware of the requirements in the AMM and LMM.

**D.    Notification of the 90-day/15-Minute Run Requirement.**

24.    The 90-day/15-minute requirement discussed herein refers to the "requirement" that the HondaJet engines needed to be started and run for at least 15 minutes every 90 days in order to remain airworthy and to remain in compliance with Honda's maintenance and warranty requirements. Neither Plaintiff had any actual awareness of this requirement, and did not comply

with the requirement as a result. Indeed, this requirement is unusual for private jet aircraft such as the HondaJet, and is not something that either one of the Plaintiffs have ever encountered in their past ownership of private airplanes.

25.     Plaintiffs and other purchasers relied upon Defendants' marketing and advertisements in deciding to purchase, own and operate HondaJets, on a longtime basis. In fact, the HondaJet engines were touted by Defendant Honda Aircraft Company as having a 5,000-hour TBO (time before overhaul), which was one of the biggest selling points of the airplane that was used extensively in the marketing of HondaJets for sale and use by owner/operators, including those who were new to the jet ownership business.  In an ongoing relationship after the sale of an aircraft, delivery and initial training, Plaintiffs and the Class further rely upon Defendants to timely, adequately and properly notify Plaintiffs and the Class of material changes in safety-related or other material, maintenance, repair, or operational recommendations when Defendants know of the same, or reasonably should know of the same.

26.     All owner operators of HondaJets (or third-party owner-designated operators or pilots) are offered the ability to purchase an EMC for the engines on the HondaJets and they are provided with 12 months of CAMP services free of charge.  CAMP is a third-party that provides aircraft maintenance and regulatory compliance management solutions for aircrafts.   In short, CAMP would send email notifications to the HondaJet owners and the ASPs of any service bulletins, service letters, FAA mandatory corrections, etc. pertaining to their HondaJet.

27.     On information and belief, beginning around March of 2020 Defendants came to realize that owners and operators of HondaJets might not be flying their aircrafts with the same regularity as they were being flown prior to the onset of the COVID-19 worldwide pandemic. Owners who may have been using their aircrafts less regularly were still maintaining and servicing

their aircraft in compliance with all known and disclosed maintenance and service and operational requirements, even if they were not flying their aircraft, or flying their aircraft with regularity.

28.     On March 20, 2022, GHAE allegedly sent out a notice to all ASPs with the subject line "Reminder of Engine Preservation Requirements during COVID-19 Crisis".  This notice referenced the LMM and requested that all ASPs remind the owners/operators of the short-term engine preservation requirements.  This notice was not sent to Plaintiffs or any HondaJet owners, but on information and belief would have been sent to the Cutter Defendants and Defendant Tower.

29.     On April 1, 2020, Defendant Honda Aircraft Company notified owners and operators of the HondaJet of a service letter with the subject line "Aircraft Storage" based on inquiries from customers regarding "long term storage of their aircraft."  Deep into the letter under a section entitled "Planning: Honda Aircraft Company recommends," readers are directed to search elsewhere for what is "recommended" in a manner that conceals, rather than makes apparent, what is recommended with regard to the running the engines for 15 minutes every 90 days. But more importantly, nowhere in the letter or elsewhere that Plaintiffs can identify, did Defendant Honda communicate that a failure of this previously unidentified recommendation to be followed would impair the safety and usage airworthiness of the aircraft and its engines such that the engines would have to be removed and disassembled, inspected, and repaired, at substantial time and money cost to the aircraft owner, as a condition to safely operate the aircraft in the air.

30.     Defendant Honda sent this April 2020 service letter purportedly to address and advise of the 90-day/15-minute run engine requirement located in the LMM.  Defendant Honda apparently called this a requirement of "storage" of the HondaJet, although most owners and operators were not storing their aircraft, even if utilization had declined during the pandemic.  The

service letter referenced the AMM instructions for storing the aircraft as well as the LMM for instructions for preserving the engines.

31.     Apparently recognizing that this April 2020 service letter was deficient as written and sent to give owners of HondaJets the information they actually required, under the prevailing circumstances, and apparently appreciating that owners were still not understanding the need to operate the engines every 90 days, Defendant Honda disseminated a second service letter in May of 2021.  In it the delivery communication, Defendant Honda notified owners and operators of a service letter with the subject line "Engine Preservation Requirements" and further attached a letter from GHAE reminding all HondaJet owners and operators of the LMM's engine preservation requirements.

32.     It turns out that the 90-day/15-minute run engine requirement can be found deeply buried in <u>only</u> the LMM, which can only be accessed through the GHAE Portal referenced above along with an EMC package, as described above.  Neither Plaintiff has ever accessed the LMM.

**E.      Failure to Comply with the 90-day/15-minute run requirement and damages suffered.**

33.     In or around June of 2021, Plaintiffs discovered that some combination of Defendants were requiring or warning all owners and operators who had ever failed to run the engines on their aircrafts for 15 minutes every 90 days, or longer, to submit their engines to a tedious and expensive inspection and overhaul and repair process depending on the duration of consecutive days when the engines were not run in such a manner. More specifically, Defendants informed Plaintiffs that all implicated engines, being those that had not been run pursuant to this purported recommendation, had to be removed from the aircrafts, trucked to a North Carolina facility, and disassembled there to look for any corrosion which may or may not have taken place,

at a substantial cost estimated to be approximately $700,000 per engine pair, in many instances, if not discounted by Defendants for some reason.

34.     And each removed engine requiring such a disassembly, inspection and repair had to be sent to Defendants' approved overhaul facility rather than to one of Defendants' regional certified service centers, in lieu of Defendants dispatching certified overhaul technicians to the location of aircrafts that were effectively grounded by the need for this disassembly, service and repair requirement, notwithstanding the fact that Defendants advertise that they will do so on a 24-hour, 7-day a week basis when such service is required.

35.     There is no mention of this purportedly recent recommendation to run the engines or the consequences of not doing so, on Defendant Honda's website, in communications among owners and operators in an owners' and operators' forum, or in any communication from the dealers who sold the HondaJets to Plaintiffs and the Class, including but not limited to the Cutter Defendants and Defendant Tower.  Further, there was no notification sent out by CAMP regarding engine preservation in 2020, despite the fact that there was a CAMP generated notice of engine preservation, in mid-2016.

36.     In fact, from April of 2020 until Plaintiffs happened to discover in June of 2021, the recommendation and consequences of failing to run the engines as recommended, even dealers or ASPs who maintained and operated HondaJets for their owners (including Plaintiff Silverleaf V, LLC) seemingly had no idea of Defendant Honda's run-the-engines recommendation, or the need for the recommended inspection and repair overhaul process if the engines were not run as putatively recommended.

37.     "Service Letters" are used to provide general information related to product improvement, economics, maintenance and/or operational practices. They do not communicate

emergency and safety operational maintenance and repair recommendations. Plaintiffs are unaware of how many Class members have yet to discover that flying their aircraft – if the engines were not run for at least 15 minutes during a 90-day period – requires a substantial and costly inspection and repair process that requires a grounding of the aircraft until the same is complete, to ensure its safety and usage airworthiness.  Any notices putatively provided by Defendants most certainly do not highlight or emphasize the engine use recommendation, nor do they highlight or emphasize the consequences of failing to adhere to the engine use recommendation so that reasonably diligent owners and operators would become aware of the recommendation and consequences of not following the same.

38.     When Plaintiffs discovered the problem from sources other than Defendants, they already had allowed their aircrafts to sit for more than 90 days without running the engines for a 15-minute period.  Accordingly, Plaintiffs were immediately subject to the removal, disassembly, inspection, and repair process Defendants insisted was a requirement of ensuring the airworthiness and safety of the aircraft, going forward, if the engines had sat idle for such a 90-day period of time.  Other Class members are similarly situated.

39.     Accordingly, Plaintiffs bring this lawsuit to recover damages caused by Defendant Honda, GHAE, the Cutter Defendants and Tower's failure to properly disseminate the information in the Service Letters and failure to properly maintain the aircraft. Plaintiffs also bring breach of warranty claims against Defendant Honda and GHAE. Of note, the claims discussed herein do not stem from any FAA approved or provided language. Instead, they stem from the insufficient warnings, notification and maintenance of the HondaJet aircrafts.

## CLASS ALLEGATIONS
### (against Defendant Honda)

40.     Defendant Honda is a resident of North Carolina who markets, advertises, sells, services and provides training to potential and actual purchasers of HondaJets located all over the world.  Plaintiffs bring this action on behalf of themselves and as a class action under the laws of the State of North Carolina, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class: All persons or entities who purchased and own a HondaJet.

41.     Excluded from the Class are Defendant and its parents, subsidiaries, and affiliates; all persons who properly elect to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

42.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs and Class members can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

43.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

44.     Numerosity, Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are at least hundreds of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

45.     Commonality and Predominance, Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation: i. Whether Defendants engaged in the conduct alleged herein; ii. Whether Defendants aircraft have the defects alleged herein; iii. Whether Defendants had a duty to disclose the existence of the defect alleged herein; iv. Whether Defendants' conduct violates applicable consumer protection statutes and other laws as asserted herein; v. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and vi. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

46.     Typicality, Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

47.     Adequacy, Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

48.     Superiority, Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. One single action creates less burden on the court system in general and avoids potential for inconsistent or

contradictory judgments and limits the chance for delay and expense to all parties and the court system.

49.     Plaintiffs reserve the right to subclass as to the other Defendants in this case as discovery progresses.

## CAUSES OF ACTION[2]

### Count One: Negligence
### (against Honda and GHAE)

50.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

51.     Defendants Honda and GHAE had a duty to act as a reasonable and prudent seller of aircraft, in this case the HondaJet aircraft. This duty includes conveying salient information about the maintenance of the aircraft to the purchasers of the HondaJet, including the 90-day/15-minute run requirement as discussed herein. Defendant Honda breached its duty when it failed to notify the Plaintiffs of the 90-day/15-minute run requirement in a timely manner; and, when it did notify Plaintiffs did so in an improper and deficient manner that was insufficient.

52.     More specifically, as to Honda and GHAE, by initially providing the requirement only in a complicated manner and that could only be accessed online, Honda and GHAE made it impossible for owners to discover the issue. Honda and GHAE did not disseminate this requirement in a physical manner as a reasonably prudent airplane manufacturer would, which was a breach of their duty.

53.      Further, Honda and GHAE voluntarily undertook to warn owners about this requirement. Once they voluntarily undertook to warn, Honda and GHAE had a duty to do so in a

---

[2] Plaintiffs acknowledge the potential for choice of law issues in this case as the HondaJets were sold from North Carolina to Plaintiffs in Texas and Arizona. As such, where indicated herein, certain causes of action are pleaded in the alternative to accommodate for differences in the states' laws.

reasonably prudent manner. However, instead, as the First Service Letter shows, Honda and GHAE did not meet this duty and this letter did not properly advise customers of the issue. The opaqueness of the First Service Letter is underscored by two things: (1) at or around the same time frame, Honda and GHAE sent the ASPs a letter which clearly explained the 90-day/15-minute issue and (2) a year later, Honda and GHAE sent the Second Service Letter which did properly address this issue in a clear way. After Honda and GHAE assumed this duty to inform the owners of the issues with the HondaJet, they breached their duty by failing to inform them in a clear, concise and effective manner.

54.     These breaches caused Plaintiffs the damages discussed herein.

### Count Two: Negligence
### (against the Cutter Defendants and Tower)

55.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

56.     The Cutter Defendants had a duty to act as a reasonable and prudent provider of service and maintenance of the HondaJet aircrafts.  This duty includes a duty to stay up-to-date with any and all manufacturers requirements and specifications, promptly responding to any maintenance advisories put out by the manufacturer of the aircraft (such as the 90-day/15-minute run requirement) by making sure the aircraft is properly maintained pursuant to any notifications or advisories. This duty also includes informing the owner of the aircraft of such advisories.  As mentioned above, in addition to the requirement in the LMM, on March 20, 2022, GHAE allegedly sent out a notice to all ASPs (which on information and belief would have included Tower and the Cutter Defendants) with the subject line "Reminder of Engine Preservation Requirements during COVID-19 Crisis".  This notice referenced the LMM and requested that all ASPs remind the owners/operators of the short-term engine preservation requirements. As such, the Cutter

Case 4:21-cv-00637-SDJ   Document 79   Filed 10/28/22   Page 18 of 27 PageID #:  818

Defendants had an additional reminder of this specific duty to maintain the subject aircraft. Notwithstanding that, the Cutter Defendants breached this duty when they failed to properly maintain the HondaJet aircraft pursuant to the 90-day/15-minute run requirement. This breach caused Plaintiffs the damages discussed herein.

57.    Defendant Tower had a duty to act as a reasonable and prudent provider of maintenance of the HondaJet aircrafts. This duty includes a duty to stay up-to-date with any and all manufacturers' requirements and specifications, promptly responding to any maintenance advisories put out by the manufacturer of the aircraft (such as the 90-day/15-minute run requirement) by making sure the aircraft is properly maintained pursuant to any notifications or advisories. This duty also includes informing the owner of the aircraft of such advisories. As mentioned above, in addition to the requirement in the LMM, on March 20, 2022, GHAE allegedly sent out a notice to all ASPs (which on information and belief would have included Tower and the Cutter Defendants) with the subject line "Reminder of Engine Preservation Requirements during COVID-19 Crisis".  This notice referenced the LMM and requested that all ASPs remind the owners/operators of the short-term engine preservation requirements. As such, the Tower had an additional reminder of this specific duty to maintain the subject aircraft. Notwithstanding that Tower breached its duty when it failed to provide the 90-day/15-minute run requirement to the subject HondaJet aircrafts and when it wholly failed to notify and/or warn Plaintiffs of the requirement.

<u>**Count Three: Negligent Misrepresentation**</u>
**(against the Cutter Defendants and Tower)**

58.    Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

**PLAINTIFFS' THIRD AMENDED COMPLAINT FOR CLASS RELIEF**          **Page 18**

59.     Defendants Cutter and Tower, in the course of their business and/or in the course of a transaction in which they had a pecuniary interest, made certain representations to Plaintiffs that not only would they maintain and service Plaintiffs' aircrafts but also that they would stay up-to-date and in communication with Honda regarding the specifications and requirements of the HondaJets so that Plaintiffs would not have to do the same. These Defendants supplied false information for the guidance of Plaintiffs and Defendants intended for Plaintiffs to rely on the incorrect information and knew that Plaintiffs would reasonably rely in this information.

60.     The Cutter Defendants and Tower did not use reasonable care in obtaining and/or communicating this information.

61.     Plaintiffs justifiably relied on these representations by Defendants in trusting Defendants to stay up to date on all maintenance and service requirements and allowing Defendants to service their aircrafts.

## Count Four: Negligent Misrepresentation
### (against Honda and GHAE)

62.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

63.     Defendants Honda and GHAE had a duty to disclose the information about the 90-day/15-minute requirement to Plaintiffs because (1) Honda and GHAE discovered new information about maintaining the HondaJets that made an earlier representation misleading or untrue; (2) Honda and GHAE created a false impression by making a partial disclosure; or (3) Honda and GHAE voluntarily disclosed some information and therefore had a duty to disclose the whole truth.

64.     Honda and GHAE, in the course of their business and/or in the course of a transaction with Plaintiffs in which they had a pecuniary interest, failed to properly disclose to Plaintiffs the 90-day/15-minute requirement discussed herein.

65.     Honda and GHAE thus supplied false and incomplete information for the guidance of Plaintiffs and intended for Plaintiffs to rely on the incorrect information and knew that Plaintiffs would reasonably rely in this information.

66.     Honda and GHAE did not use reasonable care in obtaining and failing to communicate this information.

67.     Plaintiffs reasonably relied on Honda and GHAE's lack of disclosure in failing to maintain the aircraft in conformance with the undisclosed 90-day/15-minute requirement.

68.     In addition, Honda and GHAE, in the course of its business and/or in the course of a transaction in which they had a pecuniary interest, disseminated information in a confusing, misleading and improper manner. For example, in the First Service Letter regarding the 90-day/15-minute requirement that referred to the issue as a "storage" requirement. By making this representation, Honda and GHAE supplied false and incomplete information for the guidance of Plaintiffs and intended for Plaintiffs to rely on the incorrect information and knew that Plaintiffs would reasonably rely in this information.

69.     Honda and GHAE did not use reasonable care in obtaining and communicating this information.

70.     Plaintiffs reasonably relied on Honda and GHAE's lack of disclosure in failing to maintain the aircraft in conformance with the undisclosed 90-day/15-minute requirement.

71.     Plaintiffs justifiably reliance on the non-disclosure and/or misrepresentations caused the Plaintiffs harm as discussed herein.

**Count Five:  North Carolina Consumer Protection Act;**
**N.C. Gen. Stat. §§ 75-1,1 through 75-35**
**(against Defendants Honda and GHAE)[3]**

72.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

73.     N.C. Gen. Stat. Ann. § 75-1.1 makes unfair or deceptive acts or practices in or affecting commerce unlawful.

74.     In the course of Honda and GHAE's business, they have misled Plaintiffs regarding the dangerous risks and expensive costs and consequences of not running the engines on HondaJets for at least 15 minutes during every 90-day period of time. At the outset, the nature of the original requirement was confusing and only communicated in online manuals that could only be accessed through a portal. This practice was already confusing and deceptive; however, it was made worse by the fact that Honda and GHAE then disseminated a confusing and vague First Service Letter which did not properly address the 90-day/15-minute requirement.

75.     These were unlawful practices in that Honda and GHAE represented that HondaJets and their component engines have characteristics, uses, benefits, and qualities which they do not have; represented that HondaJets and their component engines are of a particular standard and quality when they are not; and advertised HondaJets and their component engines with the intent not to sell them as advertised.

76.     As North Carolina residents involved in the marketing, advertising, sale, and servicing of a complex consumer product to consumers who relied upon Defendants Honda and GHAE after a sale, Defendant Honda and GHAE knew or should have known that their conduct violated North Carolina's consumer protection statutes.

---

[3] In the event that North Carolina law applies, Plaintiffs plead this cause of action.

77.   Defendants Honda and GHAE engaged in an unlawful practice when it failed to disclose material information concerning the HondaJets and their component engines that it knew at the time of the sale or after, and Defendants Honda and GHAE offered misleading information regarding the engines on HondaJets that in truth could become severely damaged and unsafe for their intended purposes, if the engines were not run for at least 15 minutes every ninety days, or broken down, disassembled, inspected and repaired, before use of the engines and the aircraft they power, in flight.

78.   Defendants Honda and GHAE's unlawful practices caused substantial injury to consumers.  Defendants are liable for the same unlawful practices that were caused by their agent dealers.

79.   The defective engine manufacture, and the resultant propensity for unsafe operations of the HondaJet, unless costly repairs were performed long before a total overhaul was required, was material to Plaintiffs and the Class.

80.   Defendants' conduct as described above has caused Plaintiffs and the Class injuries in violation of N.C.G.S. §§ 75-1,1 through 75-35. Plaintiffs and Class Members overpaid for their HondaJets and did not receive the benefit of their bargain, and their aircrafts have suffered a diminution in value. Plaintiffs and the Class are accordingly entitled to treble damages.

81.   Defendants have willfully engaged in the acts and practices described above, and they have made unwarranted refusal to fully resolve the matter which constitutes the basis of this suit, entitling Plaintiffs and the Class to an award of attorney's fees under §§ 75-1,1 through 75-35.

## Count Six:  Breach of Express Warranty
### (against Defendants Honda and GHAE)

82.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

83.     Defendants Honda and GHAE are and were at all relevant times merchants as defined by the Uniform Commercial Code ("UCC"), N.C. Gen. Stat. §25-2-104.[4] Defendants expressly warranted that the HondaJets and their component engines, which are merchandise, were safe. These warranties became part of the basis of the bargain.

84.     Defendants expressly warranted that HondaJets and their component engines, which are merchandise, were merchantable and fit for use for particular purposes at the time of the purchase and sale. These warranties became part of the basis of the bargain.

85.     Defendants' HondaJets and their component engines were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of purchase and sale. As a direct and proximate result of Defendants' breach of the express warranty, Plaintiffs and the Class have been damaged as a result of the diminished value of their aircrafts.

86.     Plaintiffs and the Class are entitled to damages, including the diminished value of their aircrafts as a result of the defects complained of, in addition to any costs of remediation, loss of profits, incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

## Count Seven:  Breach of Implied Warranty
### (against Defendants Honda and GHAE)

87.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

---

[4] To the extent necessary Plaintiffs also plead that Defendant Honda is a merchant as defined by Section 2.104 of the Texas Business and Commerce Code and Arizona Rev. Statute Section 47-2104.

88.    Defendants are and were, at all relevant times, merchants as defined by the Uniform Commercial Code ("UCC"), N.C. Gen. Stat. § 25-2-1 04.[5] Defendants and their agents impliedly warranted that HondaJets and their component engines were merchandise which was merchantable and fit for use for particular purposes at the time of the purchase and sale.

89.    HondaJets and their component engines were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of the purchase and sale.

90.    As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs and the Class have been damaged by the diminished value of their aircrafts, loss of profit, and other incidental and consequential damages, including such further relief as the Court deems just and proper.

**Count Eight: Fraudulent Concealment**
**(against Defendants Honda and GHAE)**

91.    Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

92.    Defendants Honda and GHAE known or should have known from their extensive testing and monitoring of the HondaJet that the design and manufacture of the same or its component engines was such that the engines would have to be run for at least 15 minutes, every 90-days, in order to remain fully operational, safe, and airworthy, even if the aircraft was not flown during such a 90-day period.  Similarly, Defendants have known or should have known that a failure to run the engines on its HondaJets for at least 15 minutes, every 90 days, would require a costly and inconvenient total engine breakdown, inspection, overhaul, and repair. More particularly, once Honda and GHAE were aware of the issue, they still did not communicate

---

[5] To the extent necessary Plaintiffs also plead that Defendant Honda is a merchant as defined by Section 2.104 of the Texas Business and Commerce Code and Arizona Rev. Statute Section 47-2104.

because they did not want to admit any wrongdoing and they wanted to charge money for the repairs that would occur as a result of the failure to comply with the 15-minunte/90-day requirement and the failure to comply would void the warranty.

93.     Defendants intentionally concealed this information or acted with reckless disregard for the truth and denied the consuming public information that is highly relevant to its purchasing decision, and the manner in which they would own and operate HondaJets they already own following their purchase.

94.     Plaintiffs and the Class are entitled to damages, including increased maintenance and repair costs, the diminished value of their aircrafts and the costs to reasonably break down their engines for inspection and repair, in addition to incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

### Count Nine: Vicarious Liability of Honda
### (against  Defendant Honda)

95.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

96.     Defendant Honda conferred authority on Tower and the Cutter Defendants to act on its behalf as ASPs for the HondaJet aircrafts.

97.     The Cutter Defendants and Tower were acting within the scope of this agency when they committed the torts of negligence and negligent misrepresentation discussed herein.

98.     Therefore, Honda is vicariously liable for the torts of the Cutter Defendants and Tower.

## Count Ten:  Punitive Damages and Attorneys' Fees

99.     Plaintiffs hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

100.     Defendants' conduct described herein was willful, wanton, and malicious. Upon information and belief, the conduct was so widespread throughout each of Defendants' corporations such that the officers, directors, and/or managers of each corporation knew or should have known of the HondaJets and component engine defects complained of, and through their failure to take corrective action, they condoned the willful, wanton, and malicious conduct.

101.     Accordingly, Plaintiffs and the Class are entitled to an award of punitive damages in an amount to be determined by a jury.

102.     Plaintiffs and the Class also seek an award and recovery of reasonable and necessary attorney's fees as authorized by applicable law.

## JURY DEMAND

103.     Plaintiffs hereby demand a trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be summoned to appear and answer, that class certification occur promptly as provided by law and that upon final trial of this matter Plaintiffs and the Class recover a judgment against the Defendants that includes:

(a)     a sum of damages within the minimum jurisdictional limits of this Court;

(b)     exemplary damages;

(c)     pre-judgment interest as provided by law;

(d)     post-judgment interest at the highest rate allowed by law; and

(e)    attorney's fees and cost of suit.

Respectfully submitted,

/s/ Kenneth B. Chaiken
Kenneth B. Chaiken
State Bar No. 04057800
kchaiken@chaikenlaw.com
Robert L. Chaiken
State Bar No. 04057830
rchaiken@chaikenlaw.com

**CHAIKEN & CHAIKEN, P.C.**
5717 Legacy Dr., Suite 250
Plano, Texas 75024
(214) 265-0250 telephone
(214) 265-1537 facsimile

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's ECF system on this 28th day of October, 2022.

/s/ Kenneth B. Chaiken
Kenneth B. Chaiken